## COLUMBIA GAS TRANSMISSION CORP.

### V.

## STATE CORPORATION COMMISSION

Record No. 911456

February 28, 1992

Present: Carrico, C.J, Compton, Stephenson, Whiting, Lacy, and Keenan, JJ.,
and Harrison, Retired Justice

*Stephen H. Watts, II (Giles D. H. Snyder; H. L. Snyder; McGuire, Woods, Battle & Boothe*, on brief), for appellant.

*Wayne N. Smith (Stewart E. Farrar; Anthony Gambardella*, on brief), for appellee.

JUSTICE LACY delivered the opinion of the Court.

Columbia Natural Gas Transmission Company (Columbia) appeals from an order of the State Corporation Commission holding that Columbia qualifies both as a pipeline transmission company and a pipeline distribution company and, therefore, is subject to property tax assessment by the Commission, rather than the State Department of Taxation, pursuant to § 58.1-2627.1(D).

Columbia, a Delaware corporation authorized to do business in Virginia, is an interstate natural gas transmission company engaged in the transmission and sale for resale of natural gas in interstate commerce. Its rates, tariffs, and services are regulated by the Federal Energy Regulatory Commission.

In Virginia, Columbia sells natural gas to gas distributors for resale to end-users and also transports gas purchased by distributors and end-users from suppliers other than Columbia. Columbia does not sell natural gas to end-users in Virginia.

Since 1984, Columbia has been treated as a pipeline transmission company and assessed for property tax assessment purposes by the Department of Taxation. In 1990, Commonwealth Gas Pipeline Corporation, a Virginia intrastate pipeline transmission company regulated by the State Corporation Commission as a public utility, merged into Columbia. The merger extended Columbia's interstate pipeline facilities to include the former Commonwealth Pipeline facilities. With a single exception, none of these facilities connects directly with an end-user of natural gas. The exception is the direct connection of Columbia's interstate pipeline to the pipeline facilities of Allied-Signal, Inc. (Allied) in Hopewell, Virginia. In this single instance, natural gas, purchased by Allied from sources other than Columbia, is transported by Columbia directly to Allied's Hopewell facilities and consumed by Allied at that point.

Following the Columbia/Commonwealth merger, the Commission's Division of Public Service Taxation informed Columbia that, because of the merger, Columbia would be classified as a pipeline distribution company for property tax assessment pur-

poses for the 1991 tax year and, therefore, must file its property tax report with the Commission. Columbia did not file its property tax report with the Commission by the statutory deadline, but sought an administrative review of the Public Service Taxation Division's determination. In response, the Commission informed Columbia that it would resolve the issue in its judicial rather than in its administrative capacity and issued a show cause order directing Columbia to appear and show cause why it should not be penalized for failing to make timely submission of the property tax report to the Commission.

A hearing was held May 20, 1991 on stipulated facts, after which the Commission issued its opinion holding that Columbia is a pipeline distribution company as well as a pipeline transmission company and, therefore, that it is to be treated as a pipeline distribution company under § 58.1-2627.1(D) for property tax assessment purposes. Columbia appeals.

This case involves the interpretation and application of three provisions of the Tax Code, Title 58.1. These provisions state, in pertinent part:

> "Pipeline distribution company" means a corporation, other than a pipeline transmission company, which *transmits, by means of a pipeline, natural gas*, manufactured gas or crude petroleum and the products or by-products thereof *to a purchaser for purposes of furnishing heat or light.*

> "Pipeline transmission company" means a corporation *authorized to transmit natural gas*, manufactured gas or crude petroleum and the products or by-products thereof in the public service *by means of a pipeline* or pipelines from one point to another *when such gas or petroleum is not for sale to an ultimate consumer for purposes of furnishing heat or light.*

Code § 58.1-2600 (emphasis added).

> When a company qualifies as both a pipeline transmission company and a pipeline distribution company, it shall for property tax valuation purposes be considered a pipeline distribution company.

Code § 58.1-2627.1(D).

■ In its interpretation of these three provisions, the Commission held that the two definitions were mutually exclusive for all purposes except property tax assessment, in which case "a particular company would be found to have characteristics of both a distribution and transmission company." The Commission determined that the word "purchaser" in the definition of distribution company meant the end-user of the natural gas. Therefore, Columbia's transportation of natural gas to Allied, an end-user, qualified Columbia as a "pipeline distribution company."

Relying on the structure and operation of the related taxation statutes, Columbia argued that "purchaser" meant a gas sales customer of the distribution company. In rejecting this construction, the Commission relied on the inclusion of the phrase "gas . . . not for sale to an ultimate consumer" in the definition of transmission company and the absence of its converse, "is for sale to the ultimate consumer," in the definition of distribution company. The Commission reasoned that, by failing to establish "diametrically opposed conditions," the General Assembly did not "necessarily imply" that the "purchaser" be a gas sales customer of the distribution company. Columbia reasserts its contention here, that "purchaser" means a gas sales customer of the pipeline company and, therefore, Columbia does not qualify as a "pipeline distribution company" and is not required to submit its property tax reports to the Commission.

■ This is a matter of first impression. A plain reading of the phrase "other than a pipeline transmission company," in the definition of "pipeline distribution company" taken alone implies that the two definitions are mutually exclusive; a transmission company could not be a distribution company. However, § 58.1-2627.1(D) clearly contemplates circumstances under which a pipeline company could qualify under both definitions. Consequently, as noted by the Commission, rules of statutory construction must be applied in interpreting these ambiguous provisions and, like the Commission, we turn to other relevant portions of the taxation statutes for guidance. Unlike the Commission, we conclude, based on our review of the past and present taxation of natural gas pipeline companies, that the word "purchaser" in the definition of "pipeline distribution company" means a gas sales customer of the pipeline company.

Prior to the 1984 recodification, pipeline companies were not identified or differentiated by the terms "distribution" and "trans-

mission." Rather, the statutes distinguished between sources of revenue which, in turn, dictated the applicable tax. Former Title 58, Chapter 12, Article 9, established the taxation scheme for natural gas pipeline companies. Former § 58-597, the source of present § 58.1-2627.1, stated that:

> Every corporation coming within the provisions of the article shall pay to the State the income tax . . . on its allocated and apportioned net taxable income, *except with respect to net taxable income derived from sales for consumption by the purchaser of natural or manufactured gas; and shall pay the state franchise tax on gross receipts* imposed by § 58-603 *to the extent that its receipts are derived from sales in this State for consumption by the purchaser of natural or manufactured gas.* There shall be excluded from allocated and apportioned net income subject to the income tax that portion thereof equal to the percentage that gross profit (operating revenues less cost of purchased gas) derived from sales in this State for consumption by the purchaser of natural or manufactured gas is of total gross profit in this State of the taxpayer. [Emphasis added.]

■ Under this statute, every pipeline company was subject to both the income tax and the gross receipts tax. If a pipeline company had no revenue from retail sales of gas in Virginia, however, it paid no gross receipts tax, only an income tax. If a pipeline company had income only from retail sales of gas in Virginia, it paid only the gross receipts tax. If a pipeline company had income from both retail gas sales and from other sources, it paid both types of taxes, computing its gross receipts tax liability solely on revenue from its retail gas sales in Virginia.

■ Title 58.1 did not change this system. The income tax is still calculated on revenue from sources other than retail gas sales and the gross receipts tax, now labeled the annual license tax, is calculated on revenue from retail sales of gas in Virginia. Code § 58.1-2627.1(A). This continued correlation between the income and the tax in Title 58.1 supports the proposition that the General Assembly did not intend the enactment of the two definitions to alter the taxation scheme.[1] As argued by Columbia, a pipeline

---

[1] Under the Commission's limited exclusivity application of the definitions, a transmission company that had revenues from both the retail and wholesale sale of gas would never

transmission company, liable for the state income tax, will become subject to the annual license tax to the extent it makes gas sales to end-users and, therefore, operates as a "distribution company." Natural gas sales by the pipeline company are the decisive element in establishing a company's tax liability.[2] For taxation purposes we conclude that the word "purchaser" as used in the definition of "pipeline distribution company" means a retail gas sales customer of the pipeline company.

In summary, notwithstanding the phrase "other than a pipeline transmission company" in the definition of "distribution company," the General Assembly did not intend the definitions to be mutually exclusive, and we hold that they are not. A single pipeline company may engage in different activities which will qualify the company both as a "pipeline distribution company" and a "pipeline transmission company" for taxation purposes. Under those circumstances, the company will be considered a distribution company for property tax assessment purposes and must file its property tax report with the Commission, including a report of its gross receipts.

In this case, Columbia qualified as a pipeline transmission company for the tax year 1991 because it transported natural gas "not for sale to the ultimate consumer for the purposes of furnishing heat or light." Code § 58.1-2600. Columbia did not qualify as a pipeline distribution company for the tax year 1991, because it did not sell natural gas to an end-user and, therefore, did not "transmit natural gas . . . to a purchaser for purposes of furnishing heat or light." *Id.* Therefore, Columbia was not required to file its property tax report for tax year 1991 with the Commission.

Accordingly, the decision of the Commission will be reversed and final judgment entered here dismissing the Rule to Show Cause.

*Reversed and final judgment.*

be liable for the gross receipts tax because, as a "pipeline transmission company," it could not be a "pipeline distribution company" for gross receipts tax purposes.

[2] We note that in § 58.1-2600, the Commission is defined and designated as the agency that assesses the property of pipeline companies subject to a "license tax measured by the gross receipts of such corporations." This definition also shows legislative reliance on the retail gas sale as a component in describing pipeline companies.